UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

CITY OF MILWAUKEE,

        Appellant/Defendant,

        v.                                          Case No. 12-C-0728

RITA GILLESPIE,

        Appellee/Plaintiff.

---

CITY OF MILWAUKEE,

        Appellant/Defendant.

                                          Case No. 12-C-729

        v.

KEVIN WILLIAMS,

        Appellee/Plaintiff.

---

CITY OF MILWAUKEE,

        Appellant/Defendant,

        v.                                          Case No. 12-C-734

JUDSON W. CAMPBELL AND
THERESE M. CAMPBELL

        Appellees/Plaintiffs.

---

DECISION AND ORDER
AFFIRMING IN PART, VACATING JUDGMENT
AND REMANDING CASES FOR FURTHER PROCEEDINGS

    The City of Milwaukee (City) appeals the bankruptcy court's final order granting

judgment in favor of the appellees/plaintiffs (hereinafter Chapter 13 debtors). In entering

judgment, the bankruptcy court denied the City's consolidated motions for summary judgment and granted the Chapter 13 debtors' cross-motions for summary judgment in three adversary proceedings commenced by Rita Gillespie, Kevin Williams, as well as Judson and Therese Campbell. In so ruling, the bankruptcy court held that the City's tax foreclosure procedure, which does not include a competitive sale process, was not sufficient to establish "reasonably equivalent value" for purposes of 11 U.S.C. § 548(a)(1)(B). The court avoided the transfers of the parcels of real property as a result of the tax foreclosures and ordered the City to return title to these properties to allow Williams, the Campbells, and Gillespie to attempt to redeem them via their Chapter 13 plans. Nevertheless, the court's conclusions of law do not establish that the debtors satisfied their burden on summary judgment. Consequently, for the reasons set forth below, this court will affirm in part and remand for further proceedings consistent with this decision.

The City has maintained consistently that the single legal issue in these appeals is whether the City's strict foreclosure of liens for unpaid real property taxes on residential real estate owned by the Chapter 13 debtors in accordance with Wis. Stat. § 75.521, and judgments entered by the Milwaukee County Circuit Court against each of the Chapter 13 debtors transferring title to those parcels of real estate to the City in satisfaction of unpaid real estate taxes, may be set aside by the bankruptcy court as "fraudulent transfers" pursuant to 11 U.S.C. §§ 522(h) and 548(a)(1)(B)(I) where the lien foreclosure proceeding did not involve a competitively bid sale procedure sufficient to establish whether the Chapter 13 debtors received reasonably equivalent value for their property.

2

As the reviewing court, the district court applies "a clear error standard to the bankruptcy court's factual findings, and reviews its resolutions of legal questions *de novo*." *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010). A finding is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Smith*, 582 F.3d 767, 777 (7th Cir. 2009) (internal citations omitted). The City conceded at oral argument on appeal that it is not challenging any of the bankruptcy court's factual findings.

Under 11 U.S.C. § 548(a)(1)(B), a bankruptcy trustee may avoid a transfer of an interest of the debtor in property within two years before the petition date if the debtor (I) "received less than a reasonably equivalent value in exchange for such transfer or obligation" and (ii) "was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation." 11 U.S.C. § 548(a)(1). For purposes of these appeals, the parties agree that the only issue is whether the Chapter 13 debtors received "reasonably equivalent value" for the transfer of their real estate as a result of the Wis. Stat. § 75.521 tax lien foreclosure proceeding brought by the City. All remaining elements of § 548(a)(1)(B) have been established.

The bankruptcy court's findings of fact reference the affidavit filed by Kerry R. Urban, Special Assistant to the County Treasurer, stating that the City had foreclosed on Williams' Sherman Boulevard property, pursuant to Wisconsin's tax foreclosure procedure because Williams owed delinquent taxes totaling $14,518.51 for the tax years 2007 and 2008. *In re Williams*, 473 B.R. 307, 309 (Bankr. E.D. Wis. 2012). In addition, the record contained Williams' 2007 City of Milwaukee Combined Property Tax Bill showing a total assessed value for the Sherman Boulevard property of $190,400, and a total estimated fair

3

market value of $206,300. *Id.* at 310. In his schedules filed on April 19, 2011, Williams valued his interest in the property at $100,000 and indicated that they owed $25,000 on it. *Id.* at 309.

Similarly, Urban stated in the affidavit that the City had foreclosed on the Campbell's North 66th Street property pursuant to Wisconsin's tax foreclosure procedure because the Campbells owed delinquent taxes totaling $8,121.35 for the tax years 2006 - 2008. *Id.* at 310. The Campbells' 2006 City of Milwaukee Combined Property Tax Bill showed a total assessed value for the North 66th Street property of $109,500 and a total estimated fair market value of $115,900. *Id.* On their schedules filed on June 23, 2011, the Campbells valued their 4893 North 66th Street property at $88,500 and indicated that they owed $13,406.76.

Finally, Urban's affidavit stated the City foreclosed on Gillespie's North Palmer Street property because Gillespie owed delinquent taxes totaling $12,070.77 for the years 2007-2009. *Id.* at 311. Gillespie's 2007 City of Milwaukee Combined Property Tax Bill, showed a total assessed value for the North Palmer Street property of $75,800, and a total estimated fair market value of $82,100. *Id.* On the schedules filed on August 12, 2011, Gillespie indicated that she valued her interest in the 2979 North Palmer Street at $60,000 but owed $16,915.77.

In its conclusions of law, the bankruptcy court could said it could not conclude, either for "legal reasons" or "common sense," that the Williams' property, with a value as assessed by the City near the time of transfer of $190,400 and a total estimated fair market value of $206,300, had a "reasonably equivalent value" of $14,518, less than 8% of its assessed value. *In re Williams*, 473 B.R. 307, 322 (Bankr. E.D. Wis. 2012). Nor could

4

Campbells' property, with a value as assessed by the City near the time of transfer of $109,500 and a total estimated fair market value of $115,900, have a "reasonably equivalent value" of $8,121.35, or less than 8% of its assessed value. *Id.* Finally, Gillespie's property, with a value as assessed by the City near the time of transfer of $75,800 and a total estimated fair market value of $82,100, could not have a "reasonably equivalent value" of $12,070.77 or less than 16% of its assessed value. *Id.*

The bankruptcy court began its analysis with a definition of "reasonably equivalent value" based on Seventh Circuit's precedent. *Id.* at 313-14. It then considered the City's argument that *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), supports a finding that the amount owed for delinquent taxes constituted "reasonably equivalent value." However, after reviewing the case law, the bankruptcy court concluded that the overwhelming majority of the cases that appellant relies upon "involved foreclosure processes which had included sales or auctions – in other words, they involved processes in which the market had operated, giving the deciding courts a basis for determining 'reasonably equivalent value.'" *In re Williams*, 473 B.R. at 313-14. Without that element, the bankruptcy court declined to find that proceedings pursuant to Wis. Stat. § 75.521(2)(a) provided the Chapter 13 debtor with reasonably equivalent value for their properties.

In its briefing to this court, the City argues that (1) a judgment of foreclosure constitutes "reasonably equivalent value," (2) a public bidding, sale, or auction process is not required to provide transferors "reasonably equivalent value," and (3) the bankruptcy court's decision granting summary judgment in favor of the Chapter 13 debtors unduly impinges upon essential state interests. However, none of these arguments undercut the

5

bankruptcy court's findings of fact or alter this court's legal conclusions with respect to the City's motion for summary judgment.

First, the City suggests that based upon *BFP*, a foreclosure judgment granting the City ownership of the Chapter 13 debtors' residential property without public sale under Wis. Stat. § 75.521(2)(a), and valuing that property solely on the real estate taxes owed by the Chapter 13 debtors establishes that "reasonably equivalent value" was received by the Chapter 13 debtors. This narrow reading ignores the essence of *BFP*. There, the Supreme Court explained that "a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." 511 U.S. 531. Taking this out of context strengthens the City's argument, but the Supreme Court was clear – as the City acknowledges later in its brief -- *BFP* "covers only mortgage foreclosures of real estate. The considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." *Id.* at 537 n.3. (Doc. 7 at 23.)

The City cites voluminous cases claiming they extend *BFP* to situations in which payment of delinquent taxes would constitute "reasonably equivalent value." However, only one of these cases, in a non-sale foreclosure proceeding, actually reaches the conclusion that the City attempts to advance. *See In re Talbot*, 254 B.R. 63 (Bankr. D. Conn. 2000). As the Chapter 13 debtors identified, a court in the same jurisdiction, just a few months later, disagreed with that conclusion and reversed direction: "the court respectfully disagrees with *In re Talbot*." *In re Fitzgerald*, 255 B.R. 807, 814 (Bankr. D. Conn. 2000) (citation omitted). Given the abundance of precedent opposing the City's view, this court finds that if property is seized without a sale or competitive bidding, it cannot be

6

presumed as a matter of law that "reasonably equivalent value" was received by a debtor transferor because market forces were completely absent. *See In re Murphy*, 331 B.R. 107, 120 (Bankr. S.D.N.Y. 2005).

The court is not persuaded that "reasonably equivalent value" was received as a matter of law simply because the City complied with the foreclosure statute, or that the reasoning of *BFP* should apply to non-sale foreclosure proceedings. As such, this court finds that a judgment of foreclosure, based solely upon delinquent taxes in a non-sale foreclosure proceeding, does not necessarily provide a property owner "reasonably equivalent value" for real estate without a public sale offering.

However, the City also claims that a public sale is not required to satisfy the "reasonably equivalent value" requirement of § 548(a)(1)(B). Speaking in broad terms, this is correct, as the presence of a public sale alone is not enough to establish that "reasonably equivalent value" was received for a transfer of property. In this circuit, the factors utilized to review "reasonably equivalent value" are: (1) whether the value of what was transferred is equal to the value of what was received; (2) the fair market value of what was transferred and received; (3) whether the transaction took place at arm's length; and (4) the good faith of the transferee. *Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997). But, for a fact-finding court, the determination of "reasonably equivalent value" is not a fixed mathematical formula. *Id.*

Here, it is clear that the Chapter 13 debtors received a value equivalent to their delinquent taxes. *In re Williams*, 473 B.R. at 322. The formula for determining reasonably equivalent value is not a fixed mathematical formula but rather depends on all of the facts of the case. *Barber,* 129 F.3d at 387. Here, the bankruptcy court held that it could not

7

conclude that the reasonably equivalent value was the equivalent of the delinquent taxes, but there were no separate conclusions of law regarding the reasonably equivalent value of each of the debtors' properties. Because this was an essential element of the fraudulent transfer statute and it was the debtors' burden to establish that no genuine issue of material fact existed on their motion, the court will remand to allow the bankruptcy court to make its findings.

One final point needs to be addressed with respect to the City's motion. The City contends that the bankruptcy court's decision unduly impinges upon Wisconsin's essential state interests. While the City raises colorable policy arguments, they appear to be based upon a fundamental misreading of the bankruptcy court's decision. The City's brief treats the bankruptcy court's decision as invalidating the use or application of Wis. Stat. § 75.521 in any circumstance. *(Doc. 7 at 26)* ("The Decision overturns a status quo that has operated successfully in the City since 1948 and for a comparable period in much of the remainder of the State of Wisconsin.") Yet, the bankruptcy court was clear that it was not invalidating the statute. Rather, that court indicated that "in the context of a bankruptcy proceeding, a 'strict foreclosure' pursuant to Wis. Stat. § 75.521 is subject to an analysis of whether the debtor received "reasonably equivalent value" within the meaning of 11 U.S.C. § 548(a)(1)(B)." *In re Williams*, 473 B.R. at 320. This means that, depending on the amount the property owner owed in delinquent real estate taxes, and the value of the property, some transfers that result from tax lien foreclosures may very well be for "reasonably equivalent value."

Ultimately, the City's catastrophesizing is undermined by the record. Martha Brown, the Deputy Commissioner of the Department of City Development, filed an affidavit in

8

support of defendant's motion for summary judgment. In her affidavit, Brown avers that the "City aggressively markets available surplus properties (including residential properties acquired by foreclosure in rem where suitable) on an ongoing basis." (Doc. 3, p. 2.) The Department of City Development's Property Sale Policies provide that properties shall be sold for market value and that properties shall be advertised on the open market prior to the acceptance of offers. (Doc. 3, p. 9 of 117.) Moreover, when a property is the former owner's homestead during the five years immediately preceding the City's acquisition via foreclosure in rem, the former owner may apply for any of the excess money proceeds following the future resale of those properties in accordance with Wis. Stat. §§ 75.36(2m) and (4).

Although the Williams and Gillespie properties were not homesteads, the record indicates that they were income generating properties. By retaining ownership of the Williams and Gillespie properties, the City benefits from rental income in addition to equity when the properties are sold. During oral argument before the bankruptcy court, Attorney Richard Check, counsel for Rita Gillespie, explained that "in Gillespie's case they [the City] also collected rents and rents so far have already paid off the taxes. So to allow this to go on, my client is not only going to lose her property, but she's going to lose her property plus an estimated amount of $80,000 worth of equity ... plus she won't have that revenue stream which in her case is necessary for her to keep her plan feasible and going." (Doc. 5, p. 24 of 52.)

At the very least, some methods of valuation, including income calculation and sales comparison, and the underlying data such as tax bills, transfers or appraisals used to resolve tax disputes, may be available to the City. *See generally* Appraisal Institute, *The*

9

*Appraisal of Real Estate* 142, 153-154, 297- 314 (13th ed. 2008). For example, the real estate tax bills reflect the estimated fair market value of each party as well as the assessment ratio. It would be difficult to argue that these tax bills are anything other than a statement or admission by the City likely reflecting a valuation of each property higher than taxes due and recovered through strict foreclosure. Therefore, the City's conjecture is unrealized and questionable.

IT IS ORDERED that the decisions of the bankruptcy court denying appellants' motions for summary judgment are affirmed in part.

IT IS FURTHER ORDERED that judgment is vacated and that these cases are remanded for further proceedings consistent with this decision.

Dated at Milwaukee, Wisconsin, this 1st day of 2013.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE